**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,                                    Case No. 3:19-md-2885

                                               Judge M. Casey Rodgers
                                               Magistrate Judge Gary R. Jones

This Document Relates to:

*United States of America v. 3M Company*
Case No. 3:20-mc-49
_____/

## ORDER

Pending before the Court is the Government's petition to quash

Defendants' non-party deposition subpoena to Dr. Leslie Schulman (an

employee of the Department of Veterans Affairs) pursuant to Federal Rule

of Civil Procedure 45 and *United States ex rel. Touhy v. Ragen*, 340 U.S.

462 (1951) ("*Touhy*").  MC ECF No. 1.[1]  Magistrate Judge Amanda

Sansone transferred the petition from the Middle District of Florida to this

Court on September 21, 2020, MC ECF No. 8, and Defendants have filed a

response in opposition to the petition to quash, MC ECF No. 12.  For the

reasons discussed below, the Government's petition is **DENIED**.

_____

[1] For ease of reference, citations to the docket in this miscellaneous matter (Case No.
3:20-mc-49-MCR-GRJ) are "MC ECF No. __."  Citations to the docket in the MDL (Case
No. 3:19-md-2885-MCR-GRJ) are "MDL ECF No. __."

## I. BACKGROUND

This multidistrict litigation is a collection of products liability actions concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2").  More specifically:

> Plaintiffs assert state law claims for negligence and strict product liability based on design defect and failure-to-warn theories, as well as warranty, misrepresentation, fraud, gross negligence, negligence per se, and consumer-protection claims.  Plaintiffs' design defect claims target two features of the CAEv2, alleging that: (1) its stem was too short for certain users—primarily those with medium to large ear canals—to insert the device deeply enough into their ears to obtain the airtight seal necessary to provide hearing protection; and (2) when the earplug was inserted according to standard fitting instructions, the positioning of the opposing flanges relative to the outer ear caused the basal edge of the third flange of the non-inserted side of the earplug to press against some users' ear canal openings and fold up, causing imperceptible loosening of the seal, which, they claim, results in little to no hearing protection for the user.  Plaintiffs' failure-to-warn claims are based on allegations that Defendants failed to provide warnings regarding the alleged dangers inherent in the use of the CAEv2.

MDL ECF No. 1280 at 16–17.  Plaintiffs are servicemembers, veterans, and civilians seeking damages in this action for hearing loss, tinnitus, and related injuries caused by their use of the CAEv2.  MDL ECF No. 704.  Defendants dispute these allegations.  MDL ECF No. 959.

The Government is not a party to this litigation, MDL ECF No. 704 at ¶¶ 16-20, but its relationship to this matter is undeniable.  The docket

2

reflects litigation between the parties over the discoverability of government records, *see, e.g.*, MDL ECF Nos. 977, 1154, 1258, and, until recently, Defendants attempted to invoke the government contractor defense as a shield from state tort liability for those plaintiffs claiming injury from using the CAEv2 during their military service, *see* MDL ECF No. 1280 (denying Defendants' motion for summary judgment based on the government contractor defense and granting Plaintiffs' motion for summary judgment on the same as a matter of law).

Consequently, the parties have identified the United States' various agencies and employees as critical sources of third-party discovery. Relevant here, on July 28, 2020, Defendants sent the VA Office of the General Counsel a request to take the deposition of Dr. Schulman, an audiologist at Bay Pines VA Health Care System in Sarasota, Fla.  MC ECF No. 12-1.  Defendants stated that Dr. Schulman's testimony was relevant because she conducted "at least one audiogram and hearing evaluation on Bellwether Plaintiff Vernon Curtis Rowe, including on March 11, 2020." *Id.* at 2.  Defendants sought to depose Dr. Schulman regarding:

> (i) the March 11, 2020 hearing evaluation and audiogram appointment with Plaintiff Rowe, and Dr. Schulman's records relating to that evaluation (and any other hearing evaluations and audiograms that Dr. Schulman conducted of Plaintiff Rowe); (ii) Dr. Schulman's notes from her evaluation of Plaintiff Rowe; (iii) Dr. Schulman's evaluation of the March 11, 2020 audiogram and

3

associated notes; (iv) any other evaluation or treatment that Dr.
Schulman did of Plaintiff Rowe or appointments that Plaintiff
Rowe had with Dr. Schulman; (v) policies and procedures related
to military audiological evaluations; (vi) selection, distribution,
fitting, and training for hearing protection devices; (vii)
completion of documents and records regarding audiological
evaluations; and (viii) completion of documents and records
regarding the selection, distribution, fitting, and training of
patients for hearing protection devices.

*Id.* at 3. Additionally, Defendants requested that Dr. Schulman produce: (i)

documents concerning the March 11, 2020, hearing evaluation and

audiogram for Plaintiff Rowe (as well an subsequent evaluation and

audiogram); (ii) documents relating to Plaintiff Rowe's hearing loss and

tinnitus; (iii) documents, communications, and correspondence between

Plaintiff Rowe and Bay Pines VA concerning any follow-up evaluations,

appointments, or discussion related to the March 11, 2020, hearing

evaluation and audiogram; (iv) written policies and procedures for military

audiological evaluations; and (v) written policies and procedures related to

the selection, distribution, fitting, and training for hearing protection devices.

*Id.* at 3–4.

On August 17, 2020-—following a separate discovery dispute

between Defendants and the Department of Defense—the Court directed

the parties to issue appropriate subpoenas for any government witness

depositions or document productions. MDL ECF No. 1331 at 47. The

Court memorialized this ruling on August 20, 2020, in Pretrial Order No. 50. MDL ECF No. 1340.  The Court explained that "the parties' practice of not issuing subpoenas for [g]overnment witnesses and documents," although understandable, "is complicating matters and interfering with the fair and efficient progress of discovery[.]"  *Id.* at 3.

Defendants acted promptly.  On August 18, 2020, they issued a subpoena to Dr. Schulman for an in-person or remote deposition and the production of documents on September 2, 2020.  MC ECF No. 1-1.  The subpoena is materially identical to Defendants' July 28, 2020, discovery request, *id.*, and was served on August 24, 2020.  MC ECF No. 12 at 1.

The VA objected to the subpoena in a comprehensive letter to Defendants' counsel on September 1, 2020.  MC ECF No. 12-3.  The VA's objections are divided neatly into three categories.  First, the VA argued that Defendants' subpoena is unduly burdensome, *id.* at 3, because "[t]he time spent in prepping Dr. Schulman for the deposition and the time spent in the actual deposition equate to significant time away from providing our nation's Veterans with essential healthcare services," *id.* at 4.[2]  In the same

---

[2] According to the VA, Dr. Schulman is a mission-essential VA healthcare employee directly responsible for patient care at a facility that was closed from March 2020 through July 2020 due to the COVID-19 pandemic.  MC ECF No. 12-3 at 3.  Dr. Schulman is now conducting telehealth or phone appointments with veterans that are scheduled six weeks ahead of time.  *Id.* at 3–4.  The VA said that requiring Dr. Schulman to comply with Defendants' subpoena will require her to cancel her appointments, which would result in

5

vein, the VA claimed that Dr. Schulman's deposition is unnecessary because Defendants have Plaintiff Rowe's treatment records, and Dr. Schulman has no independent recollection of treating Plaintiff Rowe.  *Id.* Second, the VA raised myriad procedural objections to Defendants' subpoena, challenging its breadth, notice, timeliness, and cumulative impact. *Id.* at 4–8.  Finally, the VA argued that Defendants' request to take discovery from Dr. Schulman failed to satisfy nine of the 15 factors enumerated in 38 C.F.R. § 14.804 for the VA to consider, which the Court addresses below.  *Id.* at 7–11.

## II.  THE HOUSEKEEPING STATUTE, *TOUHY*, AND THE ADMINISTRATIVE PROCEDURE ACT

Before reaching the Government's petition, Defendants' response, and the merits of the arguments raised therein, the Court must explain the groundwork for deciding whether to quash Defendants' subpoena. Typically, the Federal Rules of Civil Procedure—specifically Rule 45— govern the production of third-party discovery and objections thereto.  Fed. R. Civ. P. 45; *Citizens Union of City of New York v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017).  Not so here because the subject third-party is a current VA employee.  Instead, the Court must look

a six-week delay for those patients, and that her colleagues are unable to cover her scheduled appointments because they maintain their own appointments.  *Id.* at 4.

to numerous federal statutes and regulations, beginning with the

Housekeeping Statute, 5 U.S.C. § 301.

The Housekeeping Statute authorizes "the head of an Executive

department or military department" to "prescribe regulations for the

government of his department, the conduct of its employees, the

distribution and performance of its business, and the custody, use, and

preservation of its records, papers, and property." 5 U.S.C. § 301. The

antecedents of § 301, however, "go back to the beginning of the Republic,

when statutes were enacted to give heads of early Government

departments authority to govern internal department affairs." *Chrysler*

*Corp. v. Brown*, 441 U.S. 281, 309 (1979). Congress first enacted

housekeeping statutes in 1789 "to help General Washington get his

administration underway by spelling out the authority for executive officials

to set up offices and file government documents." H.R. Rep. No. 85-1461

(1958), *reprinted in* 1958 U.S.C.C.A.N. 3352. "Those laws were

consolidated into one statute in 1874[,] and the current version of the

statute was enacted in 1958." *Chrysler Corp.*, 441 U.S. at 309.

In 1951, the Supreme Court looked to the Housekeeping Statute to

determine whether the Attorney General properly issued a regulation

prohibiting a subordinate official of the Department of Justice from obeying

a subpoena duces tecum ordering the production of records in his possession.  *Touhy*, 340 U.S. at 463.  The Court held the regulation was valid because the Housekeeping Statute authorized the Attorney General "to prescribe regulations not inconsistent with the law for the custody, use, and preservation of the records, papers, and property appertaining to the Department of Justice[.]"  *Id.* at 468.

The Supreme Court's holding prompted federal agencies to adopt so-called "*Touhy* regulations" concerning testimony by agency employees and the production of government documents.  *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991); *see also Westchester Gen. Hosp., Inc. v. Dep't of Health and Human Servs.*, 443 F. App'x 407, 409 n.1 (11th Cir. 2011).  The VA *Touhy* regulations are codified at 38 C.F.R. § 14.800, *et seq.*, and provide, in pertinent part:

> VA personnel may provide testimony or produce VA records in legal proceedings covered by §§ 14.800 through 14.810 only as authorized in accordance with these regulations. In determining whether to authorize testimony or the production of records, the determining official will consider the effect in this case, as well as in future cases generally, based on the factors set forth in § 14.804, which testifying or producing records not available for public disclosure will have on the ability of the agency or VA personnel to perform their official duties.

38 C.F.R. § 14.803.  In turn, the § 14.804 factors are:

> (a) The need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA

8

personnel for conducting their official duties concerning servicing the Nation's veteran population;

(b) How the testimony or production of records would assist VA in performing its statutory duties;

(c) Whether the disclosure of the records or presentation of testimony is necessary to prevent the perpetration of fraud or other injustice in the matter in question;

(d) Whether the demand or request is unduly burdensome or otherwise inappropriate under the applicable court or administrative rules;

(e) Whether the testimony or production of records, including release in camera, is appropriate or necessary under the rules of procedure governing the case or matter in which the demand or request arose, or under the relevant substantive law concerning privilege;

(f) Whether the testimony or production of records would violate a statute, executive order, regulation or directive. (Where the production of a record or testimony as to the content of a record or about information contained in a record would violate a confidentiality statute's prohibition against disclosure, disclosure will not be made. Examples of such statutes are the Privacy Act, 5 U.S.C. 552a, and sections 5701, 5705 and 7332 of title 38, United States Code.);

(g) Whether the testimony or production of records, except when in camera and necessary to assert a claim of privilege, would reveal information properly classified pursuant to applicable statutes or Executive Orders;

(h) Whether the testimony would interfere with ongoing law enforcement proceedings, compromise constitutional rights, compromise national security interests, hamper VA or private health care research activities, reveal sensitive patient or beneficiary information, interfere with patient care, disclose trade secrets or similarly confidential commercial or financial

information or otherwise be inappropriate under the circumstances[;]

(i) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government favoring one litigant over another;

(j) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government endorsing or supporting a position advocated by a party to the proceeding;

(k) The need to prevent the public's possible misconstruction of variances between personal opinions of VA personnel and VA or Federal policy[;]

(l) The need to minimize VA's possible involvement in issues unrelated to its mission;

(m) Whether the demand or request is within the authority of the party making it;

(n) Whether the demand or request is sufficiently specific to be answered;

(o) Other matters or concerns presented for consideration in making the decision.

38 C.F.R. § 14.804.

Nevertheless, *Touhy* did not create or endorse an executive privilege

for federal agencies to resist entirely discovery efforts by private parties.

*N.L.R.B. v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961).[3]  Only two

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

years after *Touhy*, the Supreme Court emphasized that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953).  What's more, Congress amended the Housekeeping Statute in 1958 to include the following limitation: "This section does not authorize withholding information from the public or limiting the availability of records to the public."  5 U.S.C. § 301; *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 777–78 (9th Cir. 1994) (discussing the 1958 amendment to the Housekeeping Statute).

Because the Government does not have unfettered discretion to withhold discovery from federal litigants (either in the form of records or testimony), the Government's application of *Touhy* regulations does not escape judicial review.  The Eleventh Circuit, however, cabins such review to the Administrative Procedure Act ("APA") rather than Federal Rule of Civil Procedure 45.  *Moore*, 927 F.2d at 1197.[4]  Generally speaking, the APA provides two types of challenges for a dissatisfied party to seek redress in federal court.  5 U.S.C. § 706.  First, when presented with a complaint of agency inaction, a reviewing court may "compel agency action

---

[4] This standard of review is the subject of a circuit split.  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.2 (3d ed.).

unlawfully withheld or unreasonably delayed." § 706(1).  Second, a reviewing court may set aside a final agency action that it concludes is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[,]" in addition to other reasons.  § 706(2).

The scope of review under § 706(2) is narrow and requires only reasoned decisionmaking by the Government.  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020).  The Court must "determine only whether [the Government] examined the relevant data and articulated a satisfactory explanation for his decision, including a rational connection between the facts found and the choice made."  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019).

## III.  DISCUSSION

Turning to the dispute at hand, the Government argues that the VA's decision to not comply with Defendants' subpoena is not arbitrary and capricious because the VA already produced the requested documents and the relevant *Touhy* regulations counseled against permitting Dr. Schulman to sit for a deposition.  MC ECF No. 1 at 8–11.  The Government argues— seemingly in the alternative—that Defendants' subpoena should be quashed under Federal Rules of Civil Procedure 26 and 45 because it is unduly burdensome, seeks unreasonably cumulative or duplicative

discovery, and failed to allow a reasonable time to comply.  *Id.* at 11–13.

Lastly, the Government says Defendants' subpoena should be quashed to

the extent it seeks opinion or expert testimony from Dr. Schulman that is

prohibited under § 14.808(a).  *Id.* at 13–14.

Defendants argue that the VA's decision is arbitrary and capricious

because the VA failed to give weight to the relevance of the testimony

sought from Dr. Schulman.  MC ECF No. 12 at 2–3.  Defendants say they

are seeking testimony from Dr. Schulman regarding her evaluation of

Plaintiff Rowe and her various typical practices, *id.* at 7, because Plaintiff

Rowe disputes the accuracy of Dr. Schulman's notes, *id.* at 4–6, and

seeking documents she may have in addition to the medical records they

already have, *id.* at 8–9.  Defendants highlighted these deposition topics

and document categories in their initial discovery request to the VA

concerning Dr. Schulman.  MC ECF No. 12-1 at 3–4.  Defendants contend

further that the VA's concerns for Dr. Schulman's workload or the VA's

relationship to this litigation fail to substantiate its claim of undue burden.

MC ECF No. 12 at 7–8.

Upon review of the administrative record,[5] the Court concludes that the Government's petition to quash is due to be denied.  Although there is no dispute that the VA considered relevant *Touhy* regulations under § 14.804, it failed to articulate a rational connection between the facts and its decision to not authorize Dr. Schulman to sit for deposition or produce records.  Alternatively, Defendants' subpoena is not unduly burdensome or otherwise improper under the Federal Rules of Civil Procedure.

## A.    APA Review

The VA considered 38 C.F.R. §§ 14.804(a), (b), (c), (d), (f), (i), (j), (l), and (o), MC ECF No. 12-3 at 7–11, but the Government focuses the VA's reasoning on Dr. Schulman's workload (relative to the circumstances of the COVID-19 pandemic), her failure to independently recall treating Plaintiff Rowe, and the lack of a relationship between the VA and this multidistrict litigation, MC ECF No. 1 at 8–11.  Each of these reasons is inapt, and together they fail to substantiate the VA's decision.

*Dr. Schulman's workload*.  Defendants and the Court are not in the position to challenge the VA's assertion that Dr. Schulman maintains

---

[5] "[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."  *Dep't of Commerce*, 139 S. Ct. at 2573.  To the best of the Court's knowledge, the Government's petition and Defendants' response do not present extra-record material that was not considered by the VA.

appointments to treat veterans.  And there is no doubt the COVID-19

pandemic has exacerbated her treatment schedule.  Workload, however, is

not a rational basis to excuse Dr. Schulman from sitting for a deposition or

producing documents.  The VA's reasoning—whether applied only to Dr.

Schulman or, as the Government suggests, in the aggregate to all similarly

situated VA healthcare workers—cannot overcome the public's right to the

type of "every man's evidence" in issue here.  *Trump v. Vance*, 140 S. Ct.

2412, 2420 (2020).  If it did, the review process for federal courts would be

illusory, and agency action would go unchecked.  That is, every agency

could claim an employee is "too busy" to participate in discovery and the

requesting party would have little, if any, room to refute this contention for

the Court to undertake meaningful review.  Instead, this type of reasoning

should be exceptional because it invites an impermissible "blanket ban on

all requests for testimony," *Moore*, 927 F.2d at 1198, which is tantamount

to an evidentiary privilege that the Government does not enjoy.  At bottom,

the Government "may not refuse to comply with a subpoena by generally

asserting there is a national crisis or that it cannot perform essential

government functions."  *Sentinel Cap. Orlando, LLC v. Centennial Bank*,

No. 6:12-cv-785-Orl-36GJK, 2013 WL 12156678, at *6 (M.D. Fla. Apr. 2,

2013).

The other problem with the VA's reasoning is that it blinks reality.  It is common for individuals with time-consuming professions (*e.g.*, healthcare workers, law enforcement officers, teachers) to be the subject of discovery. Dr. Schulman is busy, but the Court suspects she does not work all the time.  Yet, the VA failed to offer any rational explanation as to why Dr. Schulman's remote deposition or production could not take place around her work obligations and at a time convenient for her.  Although this Court must defer to the VA's judgment as to "the time and effort involved in preparing the employees for their depositions and testimony and how that time commitment might hamper their ability to fulfill their duties," *Solomon v. Nassau Cty.*, 274 F.R.D. 455, 459 (E.D.N.Y. 2011),[6] its failure to consider accommodation for a brief deposition (and production of documents) was error.  *Rhoads v. U.S. Dep't of Veteran Aff.*, 242 F. Supp. 3d 985, 994–95 (E.D. Cal. 2017); *Ceroni v. 4Front Engineered Sols.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011).

*Dr. Schulman's inability to recall her examination of Plaintiff Rowe on March 11, 2020*.  The Government argues the VA properly concluded that it

---

[6] *See also COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999) ("When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources.").

would be a waste of resources to prepare Dr. Schulman for "a deposition where she has little or nothing to add[.]"  MC ECF No. 1 at 11.  This reasoning ignores critical facts about the asserted scope of Defendants' deposition.  Defendants plan to question Dr. Schulman about the accuracy of her progress notes, the results for Plaintiff Rowe's examination, and her typical practices for audiology.  This testimony is obviously relevant to Plaintiff Rowe's supposed injuries, and Dr. Schulman does not need an independent recollection of the examination to explain Plaintiff Rowe's medical records or her practices as an audiologist.  *Brown v. U.S. Dep't of Veterans Aff.*, No. 2:17-cv-1181-TMP, 2017 WL 3620253, at *8 n.12 (N.D. Ala. Aug. 22, 2017).

The VA's reasoning is also faulty because it failed to consider whether Dr. Schulman's testimony about these topics was "appropriate or necessary" under the rules governing the admissibility of Dr. Schulman's examination records for Plaintiff Rowe.  *Portaleos v. Shannon*, No. 5:12-cv-1359-LEK-TWD, 2013 WL 4483075, at *6 (N.D.N.Y. Aug. 19, 2013).

Finally, Dr. Schulman's inability to recall her examination of Plaintiff Rowe should have stressed the need for the VA to authorize Dr. Schulman to produce the documents requested by Defendants, to the extent those

17

documents exist and are not duplicative of records the VA previously produced.

*The VA's relationship to this litigation*.  The VA's argument that the various VA *Touhy* regulations counseled against involving Dr. Schulman in this litigation—by authorizing her to be deposed or produce documents—is untenable.  As explained above, any "need to avoid spending the time and money of the United States for private purposes," § 14.804(a), does not grant the VA an absolute evidentiary privilege from third-party discovery requests not enjoyed by other disinterested witness.  *Brown*, 2017 WL 3620253, at *8.  Moreover, authorizing Dr. Schulman to testify would not "result in the appearance of [the] VA … favoring one litigant over another," § 14.804(i), or "the appearance of [the] VA … endorsing or supporting a position advocated by a party to the proceeding," § 14.804(j), because Defendants are only seeking factual testimony from Dr. Schulman about her examination of Plaintiff Rowe and her audiological practices, not as an expert, § 14.808(a).  *Brown*, 2017 WL 3620253, at *8.  As another MDL court explained, the Government's production "of a fact witness for a single deposition does not make [the agency] a part of this litigation."  *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 346 (E.D. La. 2006).

In sum, the Court concludes the VA's decision to not comply with Defendants' subpoena to Dr. Schulman is arbitrary and capricious.  The VA ignored relevant, undisputed facts in the administrative record and failed to offer a rational connection between other facts and its decision to not authorize Dr. Schulman to testify or produce documents.

## B.    Federal Rules of Civil Procedure

The Government's reliance on the Federal Rules of Civil Procedure fares no better.[7]  The Court must quash a subpoena that "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  The Government, as the movant seeking to quash the subpoena, bears the burden of proof on this issue.  *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1306 (S.D. Fla. 2012); *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007).  Courts consider a variety of factors to determine whether a subpoena is unduly burdensome—the relevance of the information requested, the requesting party's need for discovery, the breadth of the request, the time period covered, the particularity of the request, and the burden imposed—but it is typically required that the movant submit an affidavit or other evidence revealing the

---

[7] Although the Court must apply the APA's arbitrary and capricious to disputes such as this until the Eleventh Circuit or United States Supreme Court says otherwise, the Court will address these arguments because it leads to the same result as APA review.

nature of the asserted burden.  *Andra Grp., LP v. JDA Software Grp., Inc.*,

312 F.R.D. 444, 449 (N.D. Tex. 2015); *see also John v. Keller Williams*

*Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2019 WL 7482200, at *2 (M.D.

Fla. Nov. 19, 2019) ("Claims of undue burden should be supported by a

statement (generally an affidavit) with specific information demonstrating

how the request is overly burdensome.").

Here, the Government has not presented an affidavit or other

evidence in support of its claim of undue burden.  This alone is a basis to

reject the Government's claim.  *Green v. Cosby*, 152 F. Supp. 3d 31, 37 (D.

Mass. 2015).  Nevertheless, the Court has considered the evidence

proffered by the Government regarding Dr. Schulman's workload, her

inability to independently recall Plaintiff's examination, and any "cumulative

impact" compliance would have on the VA, MC ECF No. 1 at 11–12, and

concludes that Defendants' subpoena does not present an *undue* burden

on the VA or Dr. Schulman.  Defendants have asked Dr. Schulman to

attend a brief, remote deposition to testify regarding an examination that

happened earlier this year and to produce documents that, according to the

Government, she probably does not have.  Compliance may be an

inconvenience for Dr. Schulman, but this is no different than a subpoena to

20

a non-party treating physician or healthcare worker in any other personal
injury case.

Defendants' subpoena is not otherwise improper under the Federal
Rules of Civil Procedure.  The subpoena does not seek "unreasonably
cumulative or duplicative" discovery, Fed. R. Civ. P. 26(b)(2)(C), because it
is clear that Defendants are requesting the production of "additional
documents concerning Rowe in [Dr. Schulman's] possession, MC ECF No.
12 at 9, that are not in the VA medical records, as well as relevant VA
policies that the Government, notably, does not claim were already subject
to discovery.

Lastly, the subpoena gave the VA and Dr. Schulman "a reasonable
time to comply."  Fed. R. Civ. P. 45(d)(3)(A)(i).  This Court has held (and
the Government concedes) that this rule "does not specify what constitutes
a reasonable time to comply."  *Minor I Doe through Parent I Doe v. School
Bd. for Santa Rosa Cty., Fla*., No. 3:08-cv-361-MCR-EMT, 2009 WL
10674249, at *2 (N.D. Fla. Nov. 23, 2009).  Instead, "common sense
dictates that reasonableness is determined in relation to the extent of the
materials requested and other underlying circumstances in the case."  *Id.*
Here, the subpoena required a brief remote deposition and the production
of documents more than one week after the service date.  It is obvious that

the VA was able to respond to the merits of Defendants' subpoena before the return date because it sent Defendants a comprehensive letter with its position on September 1, 2020.  MC ECF No. 12-3.  Moreover, the Government's argument that the Court should quash Defendants subpoena because they only gave Dr. Schulman "nine business days to respond" is not well taken because, as explained above, the Government did not make any effort to accommodate Defendants' request or seek an extension.

The Government's petition to quash Defendants' subpoena of Dr. Schulman is due to be denied because it is not unduly burdensome, does not seek unreasonably cumulative or duplicative discovery, and allowed Dr. Schulman a reasonable time to comply.

## IV.  CONCLUSION

Accordingly, it is **ORDERED** that the Government's petition to quash, MC ECF No. 1, is **DENIED**.  Defendants **must** serve a copy of this order by email on Jacqui Snead at the Department of Justice, Shaquana L. Cooper at the VA Office of the General Counsel, and Plaintiffs' Lead Counsel Bryan F. Aylstock.

**DONE AND ORDERED** this 9th day of October 2020.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

22